UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Russell G. Namchek,

    Plaintiff,

vs.

Itasca County,

    Defendant.

Civ. No. 15-CV-04049 (DWF/LIB)

**DEFENDANT'S PRETRIAL STATEMENT OF THE CASE**

---

Defendant Itasca County respectfully submits this Pretrial Statement of the Case pursuant to the Court's Pretrial Conference Notice and Order dated December 8, 2015.

**Concise Statement of the Case:**

This is an action brought by Plaintiff Russell G. Namchek ("Plaintiff") against his former employer, Defendant Itasca County ("Defendant"), alleging disability discrimination under the Minnesota Human Rights Act and Americans with Disabilities Act, retaliation under state and federal law, whistleblower claims under Minnesota Statute Section 181.932, retaliation/reprisal under Minnesota Statute Section 181.932, and retaliation/reprisal/interference discrimination under the Family Medical Leave Act.

Defendant denies that it retaliated or discriminated against Plaintiff in violation of state or federal law. Defendant further denies that Plaintiff was constructively discharged. The evidence will prove that when complaints were made regarding Plaintiff's work environment, Defendant retained an outside, independent investigator to investigate. The investigator determined the allegations were unsubstantiated. Despite these findings, Defendant continued to work with

Plaintiff to administer timely and appropriate responsive measures to address Plaintiff's concerns.

**Listing of particularized facts which support the claimed liability or defenses, including applicable statutes:**

Plaintiff was employed by Itasca County since 1991. He worked as a Clerk Accountant in the Auditor/Zoning/Solid Waste Department from February 11, 1991 until June 20, 1993. From June 21, 1993 until March 2, 2002, Plaintiff worked as an Assessment Clerk in the Assessor's Department. Beginning March 3, 2002, Plaintiff's position was re-titled to that of Assessment Technician. He remained in this position until June 11, 2006. After working briefly as a Clerk Accountant in the Auditor/Treasurer Department (from June 12, 2006 until January 1, 2007), Plaintiff returned to the Assessor's Department. From January 2, 2007 until June 20, 2007, Plaintiff worked as an Assessment Tech/Data Collector. From June 21, 2007 until January 11, 2010, Plaintiff worked as an Assessor/Appraiser I. Plaintiff was promoted to the position of Assessor/Appraiser II on January 12, 2010.

In January 2014, Plaintiff was identified as a witness in co-worker, Kelly Whitted's complaint and as an individual who had also been subject to the same offensive behavior. Plaintiff was interviewed during the investigation on March 5, 2014. Following his interview, he filed a formal complaint form along with a supplemental written narrative detailing his concerns. In follow up to both Plaintiff's and Ms. Whitted's complaints, Defendant retained an outside, independent investigator to conduct an investigation into the allegations. Also in response to the complaints, Itasca County arranged for Plaintiff's and two other co-workers' work stations to be relocated outside of the Assessor's Office in order to avoid the alleged conflicts with supervisors, County Assessor Brian Connors and Chief Deputy Assessor Amber Peratalo.

The investigator determined Plaintiff's claims that County Assessor Connors and Deputy Assessor Peratalo harassed him and engaged in retaliation were not substantiated. The investigator determined many of Plaintiff's allegations were based on speculation, conjecture, misperceptions and/or misstatements of fact that are not substantiated by the factual record. Additionally, the investigator concluded many of Plaintiff's allegations were unsubstantiated and do not establish retaliation. Finally, the investigator determined County Assessor Connors and Deputy Assessor Peratalo provided legitimate business-related reasons for their actions, thereby undermining Plaintiff's allegations of harassment and retaliation.

The investigator did determine the management styles of County Assessor Connors and Deputy Assessor Peratalo could be improved so as to have a more positive impact on the morale and work environment in the Assessor's Department. As a result, Defendant continued to work with Plaintiff to address his concerns and the weaknesses identified by the investigation. Defendant made internal changes in the structure of the Department and provided coaching and counseling to Mr. Connors and Ms. Peratalo. Additionally, Defendant retained the services of two independent, outside consultants to provide team building services to the entire Department and individualized management coaching to Mr. Connors and Ms. Peratalo.

In June 2014, Defendant created the position of Land Use Planning and Assessment Director and appointed Dan Swenson to the position. In this position, Mr. Swenson supervised Mr. Connors and Ms. Peratalo and provided them with coaching and management advice. Additionally, Mr. Swenson generally encouraged a more cooperative work environment. Mr. Swenson also became Plaintiff's direct supervisor. Defendant also proposed to reintegrate Plaintiff physically back to the Assessor's Department. In response to this proposal, Plaintiff claimed the planned return of his work space to the office caused him stress and he requested a

reasonable accommodation, asking that he be allowed to continue to maintain his work space outside of the Assessor's Department. Defendant was initially able to accommodate this request and continued to allow Plaintiff to maintain work space outside of the Department.

In late July 2014, Defendant hired a consultant to work with the employees of the Assessor's Department to identify areas of conflict and mediate a resolution. Plaintiff as well as other employees in the Department were somewhat reluctant to participate in the process and only one joint session was completed with limited success. In December 2014, Defendant hired two additional consultants to provide a more cooperative team building process and to focus on strategic planning for the Department. After the first group session revealed the other employees in the Department did not feel the same way Plaintiff did about the work environment, Plaintiff became discouraged and was unwilling to cooperate in the process, so he stopped attending the meetings and refused to participate in the team building discussions. During this same timeframe, the two consultants provided individual training assistance and management/leadership coaching to Mr. Connors and Ms. Peratalo.

Defendant accommodated Plaintiff's request to maintain his work space outside of the Assessor's Department an additional seven months after the investigation was completed, but eventually Defendant determined it was posing an undue hardship to the Assessor's Department and it was necessary to return him to the common office. It was simply no longer practical to have Plaintiff's work space separate from the rest of the Assessor's Department. Plaintiff's absence caused problems with maintaining consistencies in the processes of the Department and hampered the efficiency of the office. With Plaintiff not physically present in the office, it was also often difficult, if not impossible, for him to assist customers who stopped in the office or to provide back up counter support which everyone is required to do. In addition to being

inconvenient from a work perspective, there was no longer any reasonable extra work space available outside of the Assessor's Department. Defendant did offer Plaintiff the option of working a flexible schedule and sitting in a work space that limited his interactions with Mr. Connors and Ms. Peratalo.

Since his work space was reintegrated in the Assessor's Department in February 2015, Plaintiff claimed his work location caused him stress and anxiety. Plaintiff was allowed the option of working a flexible schedule and changing the location of his work space within the office so as to limit the interaction with Ms. Peratalo, which Defendant maintains was a reasonable accommodation. Plaintiff alleges he was constructively discharged from his employment with Defendant.

Plaintiff essentially claims to have "situational disability." He claims he is able to do all of the essential functions of his job, so long as he is not required to interact with various individuals in the office, including his co-workers and direct supervisors. However, Courts have ruled that requesting an aggravation-free workplace is not a reasonable accommodation. See, Schwarzkopf v. Brunswick Corp., 833 F.Supp.2d 1106 (D. Minn. 2011) (holding that request to have supervisors and others not yell at him was not a reasonable accommodation to alleged disability of anxiety and attention deficit disorder). Indeed, courts have found that there exists "no authority for the proposition that cessation of harassment is a required reasonable accommodation." Rodriguez v. John Muir Med. Ctr., No. 09–731, 2010 WL 3448567, at *12 (N.D.Cal. Aug. 31, 2010) (finding that there exists "no authority for the proposition that cessation of harassment is a required reasonable accommodation"); Cannice v. Norwest Bank Iowa, N.A., 189 F.3d 723, 728 (8th Cir.1999) (noting "[w]e do not believe ... that the obligation to make reasonable accommodation extends to providing an aggravation-free environment.").

Not only can an employee not request an accommodation to avoid aggravations at work, but courts have clearly held that employees may not simply use the requested accommodations to avoid certain co-workers or supervisors. Schwarzkopf, 833 F.Supp.2d at 1122 (holding that "asking for a transfer to avoid certain co-workers is not a request for a reasonable accommodation."). "[A]n employer is not required to ... reassign an employee away from any supervisor or coworker who may cause stress or conflict." Newby v. Whitman, 340 F.Supp.2d 637, 657 (M.D.N.C.2004); accord, e.g., Gaul v. Lucent Techs., Inc., 134 F.3d 576, 581 (3rd Cir.1998) (holding that it is "wholly impractical" to require an employer to transfer an employee to another department "whenever he becomes 'stressed out' by a coworker or supervisor"); Prichard v. Dominguez, No. 3:05cv40, 2006 WL 1836017, at *13 (N.D.Fla. June 29, 2006) (noting that there is an "overwhelming unanimity of opinion in courts throughout the country" that "employees may not use the [ADA] ... as the means to obtain a transfer from an undesirable boss").

There is no support for Plaintiff's claims that he was discriminated or retaliated against in any way. When Plaintiff brought concerns to Defendant's attention, Defendant took multiple measures to address his concerns. Defendant has made reasonable accommodations to Plaintiff and there is no support for his claims that he was constructively discharged.

**Itemization and explanation of any claimed damages:**

Not applicable to Defendant.

RESPECTFULLY SUBMITTED,

QUINLIVAN & HUGHES, P.A.

Dated: **January 15, 2016**       **/s/ Dyan J. Ebert**
Dyan J. Ebert #0237966
Cally R. Kjellberg-Nelson #0390443
Attorneys for Defendant
PO Box 1008
St. Cloud, MN  56302-1008
(320) 251-1414
(320) 251-1415 (Fax)
debert@quinlivan.com
ckjellberg-nelson@quinlivan.com