UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Russel G. Namchek,                                    Court File No. 15-cv-4049 (WMW/LIB)

          Plaintiff,

      v.                                           **ORDER**

Itasca County,

          Defendant.

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A), upon Defendant's Motion to Exclude Supplemental Expert Report of Michael R. Behr, Ph.D., [Docket No. 25]. The Court held a Motions Hearing on January 30, 2017, and thereafter the Court took the Motion under advisement.

For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Exclude Supplemental Expert Report of Michael R. Behr, Ph.D., [Docket No. 25].

I.      **BACKGROUND AND STATEMENT OF ALLEGED FACTS**

Plaintiff Russel G. Namchek ("Plaintiff") has been diagnosed with anxiety, depression, and a stress condition, which he refers to collectively as his "disabilities." (Compl., [Docket No. 1], 3). Plaintiff began working for Defendant Itasca County ("Defendant") in February 1991; most recently, Defendant employed Plaintiff as an assessor and appraiser. (Id. at 2; Answer, [Docket No. 4], 1). Plaintiff advised Defendant's human resources director of his anxiety and depression diagnoses. (Compl.; [Docket No. 1], 3; Answer, [Docket No. 4], 3).

In November 2013, Plaintiff filed a complaint with the Minnesota Department of Revenue ("DOR"), reporting his belief that Defendant was not complying with Minnesota DOR requirements and was thereby violating the law. (Compl., [Docket no. 1], 2). In January 2014, the Minnesota DOR began investigating Plaintiff's complaint, and Defendant also began an internal investigation into the alleged acts. (Id.). On or about March 5, 2014, Defendant's administrator informed Plaintiff that "he would not be given the opportunity to advance in his career with the Defendant." (Id. at 3). Shortly thereafter, Plaintiff filed a formal complaint with Defendant. (Id.). From March 28, 2014, to April 21, 2014, Plaintiff took leave under the Family Medical Leave Act ("FMLA"). (Id.; Answer, [Docket No. 4], 3-4).

Plaintiff claims that when he returned to work, Defendant took multiple adverse employment actions against him because of his disabilities and in retaliation for his reports of violations of the law and his use of FMLA leave. (Compl., [Docket No. 1], 3-10). These actions included creating a hostile work environment and informing Plaintiff that he would have no opportunity to advance in his career with Defendant. (Id. at 4-5). In addition, in December 2014 and January 2015, Plaintiff requested to be reassigned to an alternative work location with limited personal contact with individuals who had caused his stress, but Defendant denied the request. (Id. at 4-5).

On approximately April 15, 2015, Plaintiff filed a charge of age, disability, and retaliation discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. at 5). Plaintiff alleges that thereafter, Defendant again subjected Plaintiff to a hostile work environment and took adverse employment actions against him. (Id. at 6). Plaintiff describes the adverse employment actions as bullying, refusing to allow Plaintiff to advance his career, denial of overtime, refusing to allow Plaintiff to attend training, requiring Plaintiff to attend life

2

coaching sessions, failing to promote Plaintiff, threatening Plaintiff, and denying Plaintiff's requests for reasonable accommodations for his disabilities. (Id. at 7, 9). Accordingly, on August 25, 2015, Plaintiff submitted a resignation letter and took early retirement. (Id. at 6; Answer, [Docket No. 4], 5).

Plaintiff filed his Complaint in this Court on November 6, 2015. (Compl., [Docket No. 1]). Alleging facts as set forth above, Plaintiff brought claims against Defendant for: (1) disability discrimination in violation of the Minnesota Human Rights Act ("MHRA"); (2) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (3) unlawful retaliation in violation of the MHRA; (4) unlawful retaliation in violation of applicable federal law; (5) violation of the Minnesota Whistleblower Statute; (6) a second claim of a violation of the Minnesota Whistleblower Statute; and (7) violation of the FMLA by retaliating against Plaintiff for exercising his FMLA rights. (Id. at 10-11, 13, 15-16, 18, 21, 23, 25). Plaintiff sought lost wages, compensatory damages, punitive damages, statutory damages, and attorney's fees. (Id. at 15, 18, 20, 22, 24, 27). On November 25, 2015, Defendant filed its Answer, denying any wrongdoing and asserting affirmative defenses. (Answer, [Docket No. 4]).

On January 22, 2016, this Court issued the Pretrial Scheduling Order, which stated in relevant part that Plaintiff's Rule 26(a)(2) expert disclosures and accompanying required reports should be produced on or before September 1, 2016. (Order, [Docket No. 9], 4). Defendant's disclosures were due on October 15, 2016, and any rebuttal disclosures by Plaintiff were to be made on or before November 15, 2016. (Id.). The Court set the close of discovery for December 31, 2016. (Id. at 1-2).

On August 23, 2016, in response to a Stipulation by the parties, this Court amended the Pretrial Scheduling Order to extend the deadlines for the Rule 26(a)(2)(A) expert witness

disclosures. (Order, [Docket No. 16], 1). The amended deadlines required Plaintiff's disclosures on or before October 1, 2016, Defendant's disclosures on or before November 15, 2016, and any rebuttal disclosures on or before December 15, 2016. (Id.). All other deadlines in the Pretrial Scheduling Order remained the same. (Id. at 2).

On September 30, 2016, Plaintiff disclosed to Defendant that Plaintiff intended to call Dr. Michael Behr, Ph.D., a forensic economist, as an expert witness at trial. (Villaume Aff., Exh. 1, [Docket No. 33], 3-11). Plaintiff provided the disclosure of identity and some of the other information required by Rule 26(a)(2)(B), but stated that the expert witness report "will be provided." (Id. at 3).

On October 3, 2016, Defendant received from Plaintiff a copy of an Expert Report ("the First Expert Report") from Dr. Behr. (Kjellberg-Nelson Aff., [Docket No. 28], 1; Id. at Exh. A, [Docket No. 28-1], 1-13). The First Expert Report opines that Plaintiff was wrongfully discharged from employment and thus took early retirement on September 4, 2015, instead of retiring as anticipated on August 20, 2020. (Id. at 2). Dr. Behr calculates that Plaintiff's lost employment income is $323,449. (Id.). In doing so, Dr. Behr adds an amount designated only as "sale back" to the base amount of Plaintiff's salary for each pay period between his dismissal and his assumed retirement date. (Id. at 3-4). The First Expert Report does not explain the significance or genesis of the "sale back" amounts.

Next, Dr. Behr calculates the economic loss Plaintiff suffered in the form of loss of investment earnings as a result of reduced investment. (Id. at 6). Plaintiff was in the practice of withdrawing and investing amounts from his earnings and Plaintiff alleged he would no longer be able to do so due to his lost income. (Id.). To calculate the lost investment income, Dr. Behr uses a 7% rate of return, which he states is "consistent with the 'Blend' or 'Balanced' programs

of the large investment houses." (Id.) The total return calculated is $75,333, and after subtracting

the $30,706 to account for the return of capital already factored into Dr. Behr's analysis as lost

income, Dr. Behr concludes that Plaintiff "sustained the loss of investment income of $44,627."

(Id. at 2, 5-6). Therefore, the First Expert Report identifies Plaintiff's total economic loss as

$368,076. (Id. at 2). The remainder of the First Expert Report sets forth Dr. Behr's curriculum

vitae and other information required by Rule 26(a)(2)(B). (Id. at 7-13).

According to an Affidavit submitted to this Court by Plaintiff's counsel, following the

initial submission of Dr. Behr's First Expert Report, counsel "was informed" that the report was

"incomplete and inaccurate." (Villaume Aff., [Docket No. 33], 1). Plaintiff and Dr. Behr spoke

directly and, in November 2016, Dr. Behr completed a modified Expert Report. (Id.). Plaintiff

believed that the modified Expert Report was still incomplete and inaccurate, so Plaintiff

instructed counsel not to send it to Defendant. (Id. at 2).

In December 2016, Plaintiff's counsel received a Supplemental Expert Report ("the

Second Expert Report"), which was dated December 7, 2016, but Plaintiff again instructed

counsel not to send the Second Expert Report until it was determined to be complete and

accurate. (Id.; Mem. in Opp., [Docket No. 32], 2).

Meanwhile, on December 9, 2016, pursuant to a Stipulation by the parties, this Court

extended the deadline for all discovery to January 13, 2017. (Order, [Docket No. 21]).

After further conversations between counsel, Plaintiff, and Dr. Behr, the Second Expert

Report "was determined to be complete and accurate," and Plaintiff provided Defendant with

notice of and a copy of the Second Expert Report on January 4, 2017, for the first time.

(Villaume Aff., [Docket No. 33], 2; Kjellberg-Nelson Aff., [Docket No. 28], 2; Id. at Exh. C,

[Docket No. 28-1], 15-28). In calculating Plaintiff's investment loss, the Second Expert Report

sets the date of Plaintiff's anticipated retirement as September 5, 2020, rather than August 20, 2020. (Id. at 19). In addition, the "sale back" amounts are explained in the Second Expert Report as accounting for "a program by Plaintiff's employer whereby an employee could 'sell back' up to 80 hours twice a year at a rate of 50% more than the employee's base wage rate. Plaintiff had been participating in this program for many years and intended to continue to do so." (Id.). However, although the base salary rates used in the calculation did not change from the First Expert Report to the Second Expert Report (except for a $1 decrease in the base pay used for pay periods January 2020 through July 2020), the "sale back" amounts increase from the First Expert Report to the Second Expert Report. (Id. at 3, 18). The Second Expert Report calculates Plaintiff's income loss as $328,300, an increase of $4,851 from the First Expert Report. (Id. at 17).

Regarding Plaintiff's lost investment earnings, the Second Expert Report utilizes different rates of return than the First Expert Report. Citing the growth of Plaintiff's current investments between October 2010 and September 2017, based upon information received from Nationwide, the Second Expert Report uses 16.74% compound annual rate for investments that would have been made before the date of anticipated retirement in 2020. The Second Expert Report uses a rate of return of 3.50% after the date of anticipated retirement, based upon Plaintiff's assertion that he intended to pursue more conservative investments after retirement. (Id. at 21, 23). In addition, the Second Expert Report calculates the lost investment earnings using much higher amounts of money invested than were used in calculations in the First Expert Report. Thus, the Second Expert Report values Plaintiff's total loss of investment earnings at $1,449,173, an increase of $1,404,501 from the amount reported in the First Expert Report. The

Second Expert Report concludes that Plaintiff's total economic loss is $1,777,473. (Id. at 16-17).

Thus, the overall difference between the two Reports is $1,409,397.

On January 13, 2017, Defendant filed with this Court its Motion to Exclude
Supplemental Expert Report of Michael Behr, Ph.D., [Docket No. 25], and an accompanying
Memorandum in Support, [Docket No. 27]. Defendant asserts that the Second Expert Report was
untimely and the Court should therefore exclude it. (Mem. in Supp., [Docket No. 27], 1).
Defendant also argues that substantial differences between the First Expert Report and the
Second Expert Report render inaccurate the identification of the Second Expert Report as
"supplemental." (Id. at 6). In addition, Defendant asserts that the First Expert Report led it to
decide not to retain an expert to testify at trial, so the Second Expert Report, if allowed, would
leave Defendant with no ability to rebut the significantly different claims in the Second Expert
Report. (Id. at 6-7).

Plaintiff filed his Memorandum in Opposition and accompanying Affidavit from counsel
on January 20, 2017. (Mem. in Opp., [Docket No. 32]; Villaume Aff., [Docket No. 33]). Plaintiff
contends that the Second Expert Report was supplemental and timely disclosed or, in the
alternative, that any late submission was justified and harmless, so the Second Expert Report
should not be excluded. (Id. at 3-5).

## II.     Standards of Review

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony and
requires a party to disclose to the other parties the identity of any expert witness it may use at
trial. Fed. R. Civ. P. 26(a)(2)(A). Such disclosure must be accompanied by a written report if the
witness is retained or specially employed to provide expert testimony in the case. Fed. R. Civ. P.
26(a)(2)(B).

The report must contain:
(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii)    the facts or data considered by the witness in forming them;
(iii)   any exhibits that will be used to summarize or support them;
(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi)    a statement of the compensation to be paid for the study and testimony in the case.

(Id.). Under Rule 26(a)(2)(D), parties must make these disclosures "at the times and in the sequence that the court orders." Finally, Rule 26(a)(2)(E) mandates that "[t]he parties must supplement these disclosures when required under Rule 26(e)." Rule 26(e)(2) states:

**(1) *In General.*** A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission— must supplement or correct its disclosure or response:
    **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
    **(B)** as ordered by the court.
**(2) *Expert Witness.*** For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Rule 26(a)(3) addresses the timing of disclosures made in addition to those required by Rule 26(a)(1) and (2), and states that "unless the court orders otherwise, these disclosures must be made at least 30 days before trial." See, Fed. R. Civ. P. 26(a)(3)(B).

Pursuant to Rule 37(c), if a party fails to comply with Rule 26(a) or (e), the party may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the

opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." <u>Wegener v. Johnson</u>, 527 F.3d 687, 692 (8th Cir. 2008).

"[I]f a subsequent report materially alters, and does not merely clarify the original report, then the Court has broad discretion to prohibit the use of the second report." <u>Lenius v. Deere & Co.</u>, Nos. C12-2063, C12-2072, 2014 WL 5871088, * (D. N.D. Ia. Nov. 12, 2014) (citing <u>Williams v. Tesco Servs., Inc.</u>, 719 F.3d 968, 976 (8th Cir. 2013)).

**III.    Defendant's Motion to Exclude Supplemental Expert Report of Michael Behr, Ph.D., [Docket No. 25]**

As set forth above, Defendant asks this Court to exclude as untimely the Second Expert Report under Rule 37 because the Second Expert Report was provided after the relevant deadline, it is dramatically different than the First Expert Report, the late submission is unjustified, and allowing the admission and use of the Second Expert Report at trial would harm Defendant. (Mem. in Supp., [Docket No. 27], 6-7).

In response, Plaintiff argues that his Expert Disclosure and First Expert Report were timely and gave Defendant reasonable notice of the opinions Dr. Behr would express. (Mem. in Opp., [Docket No. 32], 3). Plaintiff also argues that his later submission of the Second Expert Report was proper under Rule 26(e)(1) because he had learned that the information in the First Expert Report was inaccurate and incomplete and he submitted the Second Expert Report promptly after confirming that it was accurate and complete. (<u>Id.</u> at 4). Plaintiff contends that the Second Expert Report was timely because it was submitted by the applicable deadline for supplementation of an expert report. (<u>Id.</u>). Alternatively, Plaintiff argues that even if this Court finds the Second Expert Report untimely, a late submission was justified and harmless. (<u>Id.</u> at 5).

The threshold issue is the parties' differing characterizations of the Second Expert Report. Defendant argues that it was not truly supplemental in nature, so it should be considered as a discrete expert report. Plaintiff argues that it was intended to supplement and correct the First Expert Report, and it should be considered as such. Resolution of this question will guide the rest of the Court's analysis.

As Plaintiff conceded at the January 30, 2017, Motions Hearing, if the Second Expert Report provided to Defendant on January 4, 2017, is not supplemental in nature, it is clearly untimely and thus subject to Rule 37 sanctions, since the Court-ordered deadline for Plaintiff to disclose the identity and the substance of testimony to be offered by such expert witnesses was October 1, 2016. (See, Order, [Docket No. 15], 1; Jan. 30, 2017, Motions Hearing, Digital Record, 2:14-16). If, however, the Second Expert Report was truly supplemental in nature, different rules apply. Supplemental additions or changes to expert reports are timely if they are disclosed "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

The Eighth Circuit has recognized a distinction between "materially altering" and "merely clarifying" an original expert report. In Williams v. TESCO Servs., Inc., 719 F.3d 968, 976 (8th Cir. 2013), the Eighth Circuit found no error where the district court struck what the plaintiff termed a supplemental expert report, since the second report was untimely, materially altered the original report, and the untimely submission was not substantially harmless. In Williams, the supplemental report at issue included opinions on one party's duty to direct and oversee certain casing assembly procedures that directly contradicted the expert's earlier report and were related to issues material to the case at hand. Id. at 975-76. At least one District Court within this Circuit has also recognized that items in a "supplemental" expert report may go

beyond supplementation of the original expert report. See, Andersen Corp. v. Fiber Composites, LLC, No. 00-cv-2548 (JNE/JGL), 2003 WL 25674809, *1-2 (D. Minn. Oct. 21, 2003) (rejecting the plaintiff's argument that a second expert report was "supplemental," noting that the second report addressed topics and issues different than those addressed in the initial report).

In addition, although such opinions are not binding on this Court, the Court nevertheless notes that courts in other jurisdictions have similarly held that second expert reports containing substantive and material changes from the initial expert reports are not supplemental in nature. For example, the District Court of Colorado granted a motion to exclude expert testimony contained in "supplemental" expert reports when the "supplemental" reports "discussed and stated opinions on a number of topics beyond" those in the initial expert report. Cook v. Rockwell Intern. Corp., 580 F. Supp. 2d 1071, 1079, 1167-68 (D. Co. 2006). The Cook court explained:

> Rule 26(e)(1) permits, indeed requires, that an expert supplement his report and disclosures in certain limited circumstances. Those circumstances are when the party or expert learns the information previously disclosed is incomplete or incorrect in some material respect. This provision is "not intended to provide an extension of the expert designation and report production deadlines" and may not be used for this purpose. Permissible supplementation under the Rules instead "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."
> A supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

Id. at 1169 (citations omitted). Other federal courts have similarly held that such an expansion in supplemental expert reports is improper. See, e.g., Capitol Justice LLC v. Wachovia Bank, N.A.,

706 F. Supp. 2d 34, 39 (D. D.C. 2009) (noting that Rule 26(e) "does not grant a party the right to supplementation when the party's motive is to 'wholly "rework [a] damages claim" or "change the substance of their contentions"'"); Schweizer v. DEKALB Swine Breeders, Inc., 954 F. Supp. 1495, 1497 (D. Kan. 1997) (striking supplemental expert report when, considered in context with "all the pleadings and the relevant state of discovery and evidence, the latest opinion offered by plaintiffs' expert is clearly an attempt to create new opinions to respond to [the opposing party's] motion for summary judgment, rather than, as plaintiff contends, merely providing some supplemental opinions"). The opinions cited above, although not controlling, are helpful in explaining the rationale used by courts to determine whether or not a second expert report is truly supplemental in nature.

Examining the Second Expert Report in the present case in light of the relevant case law, this Court finds that the changes in the Second Expert Report are substantive and material, and therefore are not supplemental in nature. The Second Expert Report materially changed the calculation of Plaintiff's economic loss by altering the date of Plaintiff's anticipated 2020 retirement, greatly increasing the anticipated rate of return on his pre-retirement-date investments, lowering the anticipated rate of return on investments made after that date, and altering the "sale back" amounts. These changes increased the total calculated loss by $1,409,397.

Because the Second Expert Report exceeded mere supplementation and actually conveyed new information and materially different calculations and conclusions, the Second Expert Report is not supplemental in nature, and does not fall under the purview of Rule 26(e)(2)'s requirement that supplements to expert reports are due by the time of the party's pretrial disclosures. Rather, the Second Expert Report constituted a discrete and untimely expert

report, as it was not disclosed on or before October 1, 2016, as required by the Pretrial Scheduling Order. (Order, [Docket No. 16], 1).

Therefore, the question is whether the failure to comply with the deadline was substantially justified or harmless, so that the exclusion provided for by Rule 37 is not warranted. When considering this question, the Court contemplates: (1) Plaintiff's reason for his failure to comply with the deadline, (2) the surprise and prejudice to Defendant, (3) the extent to which allowing the opinion in the Supplemental Expert Report would disrupt the order and efficiency of the trial, and (4) the importance of the opinion. See, Wegener, 527 F.3d at 692.

With regards to the first factor, Plaintiff argues that he did not earlier disclose the information in the Second Expert Report because he did not realize that the First Expert Report was "inaccurate and incomplete" until after the deadline for expert witness disclosures. (Mem. in Opp., [Docket No. 32], 6). Yet, Plaintiff has provided no explanation as to why he could not have checked the accuracy and completeness of the First Expert Report at a time which would have allowed timely submission of a correct and complete report. The Pretrial Scheduling Order was issued on January 22, 2016, and gave Plaintiff until September 1, 2016, to make his initial expert witness disclosures. The Court later extended that deadline to October 1, 2016. Plaintiff had over 8 months to produce an accurate and complete expert report and has not provided good reason to justify his failure to do so.

In addition, there is no claim or showing to this Court that information unavailable at the time of the First Expert Report led to these changes. Indeed, since the Plaintiff himself was the source of much of the material information provided to his expert, it appears that Dr. Behr should have had the information the Second Expert Report is based on at the time he created the First Expert Report. This also weighs against finding that the untimely submission of the Second

13

Expert Report was substantially justified. See, In re Baycol Prods. Lit., 596 F.3d 884, 888 (8th Cir. 2010) (finding that the explanation that an expert further reviewed relevant records in detail was an insufficient justification for untimely disclosure of a supplemental expert report where "there is nothing in the record to indicate that [the expert] could not have reviewed [the] records in detail at the time of his initial report").

As to the second factor, Plaintiff contends that allowing him to use the Second Expert Report at trial would cause no prejudice "because the Defendant already knew of the Expert, the fact that his opinion related to the Plaintiff's damages, as well as the Expert's background and qualifications." (Mem. in Opp., [Docket No. 32], 6). This argument is unpersuasive, as the Second Expert Report greatly and materially changed the assumptions and calculations utilized in the First Expert Report. Admission of the second report would likely cause great prejudice because Defendant made the strategic decision not to retain its own expert witness based on the information in the First Expert Report, and it is now left without the time or opportunity to have an expert witness rebut at trial the opinion provided in the Second Expert Report. (See, Mem. in Supp., [Docket No. 27], 6-7). In addition, because discovery closed only 9 days after Plaintiff gave Defendant the Second Expert Report, Defendant has not had the opportunity to depose Dr. Behr regarding the opinions and information in the Second Expert Report. "An untimely expert disclosure is not harmless if the other party lacks time to prepare to refute the report." Travelers Exp. Co., Inc. v. Transaction Tracking Techs., Inc., No. 3-cv-2848 (DSD/JGL), 2005 WL 5979355, *12 (D. Minn. May 2, 2005) (citing Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008-09 (8th Cir. 1998)).

The third factor is the availability of a remedy to alleviate the prejudice caused by admission of the evidence at trial. The Court could reopen discovery and allow time for

Defendant to depose Dr. Behr and retain an expert witness of its own, which would necessarily require pushing back the anticipated trial dates. Plaintiff stated at the January 30, 2017, Motion Hearing that Plaintiff was willing to allow Defendant to now depose Dr. Behr at Plaintiff's expense. (Jan. 30, 2017, Motion Hearing, Digital Record, 2:17-18).

Despite Plaintiff's foregoing offer, the record now before this Court gives the Court reason to conclude that the failure to earlier disclose the Second Expert Report was meant by Plaintiff to gain a discovery advantage. At no point after Plaintiff first discovered errors in the First Expert Report did Plaintiff inform Defendant that the First Expert Report would be corrected, nor did Plaintiff even inform Defendant that the First Expert Report was inaccurate. Instead, Plaintiff directed his counsel on two occasions not to disclose a modified Expert Report and not to disclose the final Second Expert Report until Plaintiff was satisfied with it, which did not occur until January 4, 2017, over 3 months after the initial deadline for such disclosure.[1] This purposefully late disclosure caused Defendant to make certain strategic decisions such as not to retain an expert witness of its own and other trial-preparation strategies.

This Court will not reward Plaintiff for his noncompliance with the Scheduling Orders issued by this Court or for his failure to even inform Defendant that the First Expert Report was going to be revised. See, United States v. Marder, Case No. 13-cv-24503-KMM, 2016 WL 4764958, *2 (D. S.D. Fla. July 8, 2016) (striking untimely second expert report and declining to "reward" one party for its noncompliance with expert disclosure deadlines that "paint[ed] the Court 'into a corner in which it has to strike the [expert] disclosures or extend the discovery deadline'"). Nor, at this stage in the proceedings, will the Court require Defendant to start over on

---

[1] This disclosure was also only 9 days before the close of all discovery pursuant to the existing pretrial scheduling order.

discovery regarding Plaintiff's expert opinions as were substantially altered in the Second Expert Report.

Finally, with regards to the fourth factor, the Court recognizes that the material within the Second Expert Report is important to the case. It claims and provides a basis to justify over $1 million in damages from lost income and lost investment earnings not included in the First Expert Report. Nevertheless, on the basis of the record and circumstances of the present case, the Court concludes that Plaintiff's failure to timely disclose the Second Expert Report was not substantially justified and is not harmless. Thus, the Second Expert Report will be stricken and Dr. Behr's testimony will be limited to the opinions expressed in his First Expert Report.

## IV.     CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

1. That Defendant's Motion to Exclude Supplemental Expert Report of Michael Behr, Ph.D., [Docket No. 25], is **GRANTED**, as set forth above**.**


Dated: February 16, 2017                              s/Leo I. Brisbois
                                                      Leo I. Brisbois
                                                      U.S. MAGISTRATE JUDGE